709 F.2d 878
 Lilia KAPPAS, Administratrix of the Estate of Florence
Kappas, deceased, Appellant,
v.
CHESTNUT LODGE, INC.; Jaime Buenaventura, M.D.; Dexter M.
Bullard, Jr., M.D.; Dexter M. Bullard, Sr., M.D.; Corrinne
Cooper, M.D.; Martin Cooperman, M.D.; Jerry Dowling, M.D.;
John P. Fort, M.D.; Oswoldo Guimaraes, M.D.; Sol Herman,
M.D.; Elizabeth Mohler; Ping-Nie Pao, M.D.; Dewayne
Phillips, M.D.; Jonathan Tuerk, M.D.; and Otto Will, M.D., Appellees.
and
Robert R. Montgomery, M.D.; John C. Saia, M.D.; and
Suburban Hospital Association, Inc., Defendants.
 No. 81-1327.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 13, 1983.
Decided June 9, 1983.
 
 Dennis M. Hart, Washington, D.C. (Kenneth Michael Robinson, Washington, D.C., on brief), for appellant.
 Roy L. Mason, Rockville, Md. (Donahure, Ehrmantraut & Montedonico, Rockville, Md., on brief), and William J. Carter, Rockville, Md. (Joel M. Savits, Carr, Jordan, Coyne & Savits, Rockville, Md., on brief), for appellees.
 Before HALL, MURNAGHAN and SPROUSE, Circuit Judges.
 SPROUSE, Circuit Judge:
 
 
 1
 This appeal involves a diversity action brought by Lilia Kappas, as administratrix of the estate of Florence Kappas, her deceased sister, against Chestnut Lodge, Inc. and various individuals associated with Chestnut Lodge.[1] Kappas' complaint alleged medical malpractice, breach of contract, and invasion of privacy on the part of the Chestnut Lodge defendants. The district court entered a judgment after a jury verdict in favor of the defendants and Kappas appeals. We affirm.
 
 
 2
 Defendant Chestnut Lodge is a private psychiatric care facility in Rockville, Maryland. Florence Kappas entered the institution in 1964, and was diagnosed as a chronic schizophrenic. She remained at the hospital, first as a resident and later as an outpatient, until shortly before her death in June, 1973. Although there was a dispute at trial concerning the cause of Kappas' death, testimony established that as a result of one of her psychiatric problems she ate irregularly and that her weight had dropped to 78 pounds in the month preceding her death. The immediate cause of her death was listed as a pulmonary embolism.
 
 
 3
 From the date of Florence Kappas' admission into Chestnut Lodge until 1969, her condition apparently improved under the care of her then treating psychiatrist, Dr. Dewayne Phillips. Following Phillips' departure in 1969, she was placed under the care of Dr. Sol Herman, after which she grew resistant to therapy. After Florence's death in 1973, Lilia Kappas filed this action pursuant to Maryland law, alleging malpractice on the part of Dr. Herman and others, breach of a third-party beneficiary contract by Chestnut Lodge, and invasion of privacy by various defendants responsible for administering psychotherapy and other forms of psychiatric therapy to her sister at the Lodge. The district court granted defendants' motion for a directed verdict on the invasion of privacy claim. The jury then found for the defendants on all other counts.
 
 
 4
 The principal contention advanced by Kappas on appeal is that the district court erred when it refused to admit into evidence transcripts of certain Chestnut Lodge staff conferences. The hospital had held staff conferences in 1965, 1967, 1969 and 1973 relating to the treatment which the deceased received during the period prior to each conference. The conferences are an integral part of the administration of patient care at Chestnut Lodge. They were established by the Lodge's governing board as a means of evaluating the patient care and treatment programs at the hospital. All members of the hospital medical staff as well as other members of its clinical staff are invited to participate in the conferences. Discussions concerning individual patients are a regular part of the conferences, but do not become a part of a patient's chart or medical record at the institution. In the case of the deceased, the transcript of each conference was approximately 23 pages. During these conferences, the physicians and other hospital personnel having a role in Kappas' treatment discussed their impressions of the patient, her medical and family history, and her activities. The discussions also included comments by other physicians associated with the hospital.
 
 
 5
 The trial court ruled that the conference transcripts were inadmissible by virtue of Article 43, section 134A(d) of the Maryland Code. That section provides:
 
 
 6
 The proceedings, records, and files of a medical review committee are neither discoverable nor admissible into evidence in any civil action arising out of matters which are being reviewed and evaluated by the committee. This immunity does not apply to a civil action brought by a party to the proceedings of the review committee and claiming to be aggrieved by the decision of the committee. Also, this immunity does not extend to any records or documents considered by the committee which would otherwise be subject to discovery and introduction into evidence in a civil action.
 
 Md. Health Code Ann. Sec. 134A(d) (1980).[2]
 
 7
 Kappas contends that the statute is designed only to protect the confidentiality of medical review committees functioning in a peer review or disciplinary capacity. She argues that it should not be interpreted to immunize the staff conference reports excluded by the trial court. Decisions of Maryland courts provide no guidance on the scope of section 134A.[3] The plain language of the statute, however, reflects that the Maryland legislature intended a broader application than that urged by Kappas. It is true that the statute immunizes only the proceedings, records, and files of a "medical review committee." The definition of such a committee, however, is broad enough to include the Chestnut Lodge staff conferences.
 
 
 8
 Section 134A(a)(2) defines a medical review committee as a "committee or board described in subsection (b) of this section, which is engaged in carrying out one or more of the functions described in subsection (c) of this section." Section 134A(b) lists six categories of "medical review committees," including:
 
 
 9
 (3) A committee of the medical staff or other committee of a "hospital" or "related institution" as defined under this article if the committee was formed and approved by the governing board of the hospital or related institution, or the committee operates pursuant to written bylaws that have been approved by the governing board of the hospital or related institution....
 
 Section 134A(c) provides:
 
 10
 The medical review committee shall engage in one or more of the following functions:
 
 
 11
 (1) Evaluating and improving the quality of health care rendered by providers of health care;
 
 
 12
 (2) Evaluating the need for and the level of performance of health care rendered;
 
 
 13
 (3) Evaluating the qualifications, competence and performance of providers of health care; and
 
 
 14
 (4) Evaluating and acting upon matters relating to the discipline of any individual provider of health care.
 
 
 15
 The Chestnut Lodge staff conferences were established by the hospital's governing board and therefore satisfy the subsection (b)(3) requirement that a committee must be "formed and approved" by a hospital's governing board.[4] The staff conferences also satisfy the requirement that a committee engage in "one or more" of the functions described in section 134A(c). Although the conferences in issue focused on Florence Kappas, they were structured to review such matters as the progress of patient care and the implementation of programs in the hospital, as well as the operation of different wards in the hospital. The conferences functioned generally as a round table discussion of the problems involved in treating schizophrenic patients like Kappas. The discussions involving Kappas did not become a part of her medical records, but served as a focal point for reviewing the type of treatment being rendered at Chestnut Lodge. They were thus well within the ambit of sections 134A(c)(1) and (2).
 
 
 16
 The immunity afforded by section 134A(d) is not limited solely to disciplinary matters, but applies to "matters which are being reviewed and evaluated by the committee." These "matters" include improving the quality of health care, evaluating the need for and level of performance of health care rendered, as well as disciplinary matters. The district court therefore properly excluded the conference reports as the proceedings of a "medical review committee."
 
 
 17
 We have reviewed the record, briefs and arguments concerning the other issues raised by Kappas and find no merit in them. The judgment of the district court is therefore affirmed.
 
 
 18
 AFFIRMED.
 
 MURNAGHAN, Circuit Judge, concurring:
 
 19
 Interpretation of Maryland Code Article 43, Section 134A(d) resolves a question of considerable potential importance relating to the trial of medical malpractice cases. While I do not disagree with the conclusion so carefully reached in the panel opinion, I perceive no need to agree either. For there is another, less extensive route to the same end result. I would not unnecessarily anticipate a decision by a Maryland court, especially the Maryland Court of Appeals, the final arbiter of the law of that State.
 
 
 20
 Kappas obtained the excluded conference reports through discovery, secured opinion letters from three physicians based in part on the contents of the conference reports, called two of them as expert witnesses where they were available to testify as to all relevant materials underlying their opinions, and was permitted to refer to the text of the conference reports in cross-examination of the witnesses for appellees.
 
 
 21
 Under those circumstances, I would simply rest decision affirming the judgment entered on the verdict below on F.R.Civ.P. 61.[1] I would leave for another day, and preferably another court, the construction of a statute raising several potentially difficult questions.
 
 
 
 [1]
 Kappas' complaint also named as defendants Suburban Hospital Association, Inc. and various individuals associated with the hospital. The district court granted a motion by these defendants for severance prior to trial, and they are not included in this appeal
 
 
 [2]
 Since the entry of judgment in the present case, the statute has been recodified under Md. Health Occ.Code Ann. Sec. 14-601 (1981)
 
 
 [3]
 In the only Maryland case interpreting the statute, Unnamed Physician v. Comm'n on Medical Discipline, 285 Md. 1, 400 A.2d 396 (1979), the court's inquiry was limited to the question of whether the records and files of a medical review committee were protected by the statute from the subpoena power of the state's Commission on Medical Discipline. The case, therefore, provides no guidance on the question presented here
 
 
 [4]
 There is likewise no question that the Chestnut Lodge is a "hospital" as defined under the then applicable statute, Md. Health Code Ann. art. 43, Sec. 556(b) (1980), now codified under Md. Health-Gen.Ann. Sec. 19-301(e) (1982)
 
 
 [1]
 No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice