IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

Nos. 722 and 2256

September Term, 2014

MARYLAND BOARD OF PHYSICIANS, et al.

v.

ANNE GEIER, et al.

Arthur,
Friedman,
Davis, Arrie W.
    (Retired, Specially Assigned),

JJ.

Opinion by Arthur, J.
Concurring opinion by Friedman, J.

Filed: October 1, 2015

During a disciplinary proceeding against appellee Mark Geier, M.D., the Maryland Board of Physicians publicly disclosed confidential medical information concerning Dr. Geier, his wife Anne, and their son David. David Geier was the subject of a separate disciplinary proceeding at the time of the disclosures.

The Geiers responded to the disclosures by accusing the Board, its 22 members, its administrative prosecutor, and two staff members of abuse of power, invasion of privacy, and acting maliciously and vindictively. They filed suit in the Circuit Court for Montgomery County.

In discovery, the Geiers attempted to uncover why the Board[1] publicly disclosed their confidential medical information. The Geiers also attempted to establish that the disciplinary proceedings against them were motivated by malice. Although the Geiers ordinarily could not have obtained discovery about the Board's decisional processes in the disciplinary proceedings against them (*see*, *e.g.*, *Montgomery County v. Stevens*, 337 Md. 471, 481 (1995); *Public Serv. Comm'n v. Patuxent Valley Conservation League*, 300 Md. 200, 214 (1984)), they attempted to discover that information in this separate civil case and then to use it in the disciplinary proceedings. Their discovery requests collided with the public interest in protecting the confidentiality of governmental communications of "an advisory or deliberative nature," *Hamilton v. Verdow*, 287 Md. 544, 563 (1980), as well as the general statutory prohibition on the discoverability and admissibility of

---

[1] References to "the Board" include the Board members, the Board staff members, and the administrative prosecutor who make up the 25 co-defendants in this case.

documents from the Board's investigations and hearings. Md. Code (1981, 2014 Repl. Vol.) § 14-410 of the Health Occupations Article ("HO").

Citing the deliberative privilege, the general statutory prohibition against the discovery of the records of its investigatory proceedings, the attorney-client privilege, and the work-product protection, the Board refused to produce much of the information that the Geiers had requested in discovery. The circuit court granted one of the Geiers' several motions to compel, and the Board took an interlocutory appeal from that discovery order (No. 722).

After this Court stayed part of the discovery order pending the appeal, the Geiers moved for discovery sanctions because of the Board's other failures of discovery, most notably including the failure to produce a properly prepared designee at a duly noted deposition. The circuit court imposed the sanction of a default judgment on the issue of liability, and the Board took a second interlocutory appeal (No. 2256), which we consolidated with the first.

## QUESTIONS PRESENTED

The Board's consolidated appeal presents several questions for our review. We quote the single question presented in No. 722 and rephrase and consolidate the questions posed in No. 2256:

1.    Does the circuit court's order compelling disclosure violate the Board's absolute quasi-judicial immunity, its common law and statutory privileges, and §§ 1-401(d) and 14-410 of the Health Occupations Article?

2.     Did the court err by entering an order of default against the Board on the issue of liability?[2]

The Geiers have moved to dismiss both appeals on the ground that the order compelling discovery and the order of default are unappealable interlocutory orders, and not final judgments from which an appeal will lie.

In the unusual circumstances of this case, we conclude that the first of the two appeals is properly before us, because the requested discovery implicates the decisional processes of high-level government administrators and is thus eligible for an immediate appeal under the collateral order doctrine. *See*, *e.g.*, *Stevens*, 337 Md. at 479-80; *Patuxent Valley*, 300 Md. at 210. On the merits, we vacate the discovery order and remand for further proceedings, because the circuit court did not correctly evaluate some of the Board's statutory and common-law privileges, including the deliberative privilege.

On the other hand, we conclude that the order of default is not properly before us. Nonetheless, because the decision on the discovery order may indirectly affect the

---

[2] The Board presented the following questions in case number 2256:

1.  Is the sanction of default as to liability barred by the defendants' absolute judicial immunity from suit?

2.  In proceeding on the plaintiffs' fifth motion for discovery sanctions and entering a sanction of default as to liability, did the circuit court improperly interfere with the defendants' pending appeal from the order compelling discovery?

3.  Did the circuit court err and abuse its discretion in entering a discovery sanction of default as to liability against all defendants for the Board's purported failure to prepare adequately its Rule 4-212(d) organizational representative?

premises for the order of default, the circuit court, upon a proper motion, should reevaluate the propriety of that interlocutory order on remand. *See* Md. Rule 2-602(a) (stating that, in general, "an order or other form of decision, however designated, that adjudicates . . . less than an entire claim . . . is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties"); *Gertz v. Anne Arundel County*, 339 Md. 261, 272-73 (1995) (an interlocutory order "is not a final judgment and may be revised at any time before the entry of a final judgment").

## FACTUAL AND PROCEDURAL HISTORY

Dr. Geier is a physician who advocates the theory that certain vaccines cause autism in genetically susceptible children. Dr. Geier's son, David Geier, is not a physician, but has assisted his father in his research concerning that theory. In a case concerning the admissibility of expert testimony, the Court of Appeals has held that "Dr. Geier's genetic susceptibility theory is no more than hypothesis and conjecture, devoid of a generally accepted methodology to support it." *Blackwell v. Wyeth*, 408 Md. 575, 618 (2009).

In protracted and contentious disciplinary proceedings, the Board has established that Dr. Geier committed numerous violations of the Medical Practice Act, HO §§ 14-401 *et seq.*, in his treatment of autistic children. *Geier v. Maryland State Bd. of Physicians*, 223 Md. App. 404, 415-17 (2015). The Board has also established that, while assisting in the treatment of autistic children in Dr. Geier's practice, David Geier practiced medicine

-4-

without a license. *David A. Geier v. Maryland Bd. of Physicians*, No. 709, Sept. Term 2014, slip op. at 8-10 (filed July 31, 2015).

The Geiers contend that the Board has acted against them out of a desire to punish them and to discredit their research.

### A.     The Disciplinary Proceeding against Dr. Geier

On April 27, 2011, the Board summarily suspended Dr. Geier's right to practice medicine, asserting that the "public health, safety or welfare imperatively required emergency action." On May 16, 2011, the Board formally charged Dr. Geier with violations of the Medical Practice Act. As later amended, the charges included unprofessional conduct in the practice of medicine; willfully making or filing a false report or record in the practice of medicine; willfully failing to file or record any medical record as required under law; practicing medicine with an unauthorized person or aiding an unauthorized person in the practice of medicine; gross overutilization of health care services; failing to meet standards, as determined by peer review, for the delivery of quality medical care, and failing to keep adequate medical records. *Geier*, 223 Md. App. at 413-14.

In September 2011, after six days of hearings, an administrative law judge ("ALJ") issued a proposed decision upholding the summary suspension of Dr. Geier's license. In March 2012, after an additional five days of hearings, the ALJ issued a 126-page proposed decision, in which she recommended that the Board uphold the charges of unprofessional conduct, willfully making or filing a false report or record, failing to meet

standards for the delivery of quality medical care; and failing to keep adequate medical records. The ALJ also recommended that Dr. Geier's license be revoked. *Id.* at 414.

Dr. Geier took exceptions, but on August 22, 2012, the Board issued a final decision ordering that his license be revoked. On a petition for judicial review, the Circuit Court for Montgomery County affirmed on April 9, 2014. *Id.* at 418. On appeal, this Court affirmed as well. *Id.* at 412.[3]

**B.      The Disciplinary Proceeding against David Geier**

Meanwhile, on May 16, 2011, the Board charged David Geier with practicing medicine without a license in violation of HO § 14-601. On March 7, 2012, an ALJ recommended that the charges be dismissed. On July 30, 2012, however, the Board rejected the recommendation (and many of the ALJ's findings), concluded that Mr. Geier had practiced medicine without a license, and imposed a fine of $10,000. On a petition for judicial review, the Circuit Court for Montgomery County affirmed on April 25, 2014. In an unreported opinion dated July 31, 2015, this Court affirmed as well.[4]

**C.      The Disclosure of the Geiers' Medical Information**

On January 25, 2012, while both of these disciplinary proceedings were pending, the Board issued a cease and desist order that accused Dr. Geier of practicing medicine at a time when his license had been summarily suspended. The order, which was posted to

---

[3] For a summary of the Board's findings against Dr. Geier, see *Geier*, 223 Md. App. at 414-18.

[4] The Geiers' unsuccessful petitions for judicial review were not decided by the circuit court judge who made the rulings that are at issue in this appeal.

the Board's website and could be viewed by the public, specifically alleged that Dr. Geier had written prescriptions for himself, his son David, and his wife Anne. The order also detailed the Geiers' confidential medical information, identifying the specific medications that Dr. Geier had allegedly prescribed for each person and describing the medical conditions that each medication typically treated. Rather than reproduce the confidential medical information, we shall simply state that it was highly personal in nature and not of the sort that an ordinary person would want to have disseminated to the public.

Although the Board claimed (and continues to claim) that it had the right to post the Geiers' confidential medical information to its website,[5] it promptly removed the information when the Geiers protested. In addition, the Board issued an amended cease and desist order that deleted the references to the medications that Dr. Geier had allegedly prescribed and the patients for whom he had allegedly prescribed them. In the interim, however, other persons viewed and commented about the Geiers' confidential medical information, and those comments are still accessible on the internet. Ultimately, an ALJ rejected the charge that Dr. Geier had written any prescriptions and had violated the summary suspension order.

---

[5] The record does not fully support the Board's claim that it had the right to disclose a patient's confidential medical information to the public. In an email that the Board disclosed in discovery, one of the Board's attorneys advised the Board that "[w]e are clearly violating" one of the Board's own regulations. In the same email trail, the Board's chair, Paul Elder, M.D., reacted with astonishment to the news that the Board had publicly disclosed a patient's confidential medical information on its website. He agreed that the Board should "cease this activity asap!!!"

**D.** **The Geiers' Complaint, and the Board's Unsuccessful Motion to Dismiss**

On December 21, 2012, while Dr. Geier and David Geier were pursuing their petitions for judicial review of the Board's rulings against them, they and Dr. Geier's wife filed a three-count complaint in the Circuit Court for Montgomery County. As defendants, the Geiers named the Board, as well as each of its members, its administrative prosecutor, and two staff members. The complaint alleged that by disclosing the Geiers' confidential medical information, the defendants had deprived them of their constitutional right to privacy; violated the Maryland Confidentiality of Medical Records Act, Md. Code (1982, 2009 Repl. Vol.), §§ 4-301 *et seq*. of the Health General Article; and committed the tort of invasion of privacy by giving unreasonable publicity to private facts.

The complaint alleged that the defendants "acted with ill will and with the intent to injure Plaintiffs by exposing Dr. Geier's personal medical information and that of his wife and son." The Geiers requested compensatory damages as well as $3 million in punitive damages.

The Board moved to dismiss the complaint for failure to state a claim upon which relief could be granted. Following a hearing on July 10, 2013, the circuit court dismissed the Confidentiality of Medical Records Act claim, explaining that the statute does not create a private right of action. The court, however, declined to dismiss the constitutional claim and the invasion of privacy claim.[6]

---

[6] As one basis for its motion to dismiss, the Board asserted that it, its members, its

### E. Discovery

The Geiers sought extensive discovery, attempting to unearth any evidence that might show that the Board acted out of animosity towards them. The Geiers did not limit their discovery requests to the specific circumstances immediately surrounding the Board's disclosure of their confidential medical information. Instead, based on the contention that the Board was motivated by an overarching desire to punish them and discredit their research, the Geiers sought documents and testimony that revealed the Board's decisional processes in the administrative proceedings against them. They also sought communications between the Board and its counsel that related to these prosecutions.

The Board's response to the Geiers' maximalist approach proved unsatisfactory both to the Geiers and, eventually, to the circuit court. The Geiers filed multiple motions to compel and motions for discovery sanctions, two of which are the subject of this appeal.

---

staff, and the administrative prosecutor had absolute quasi-judicial immunity from suit under *Ostrzenski v. Seigel*, 177 F.3d 245 (4th Cir. 1999). Because the court regarded the record as inadequate to evaluate the applicability of any immunities at that early stage of the proceedings, it rejected the immunity argument without prejudice to the Board's right to reassert it on summary judgment. At present, the Maryland appellate cases do not unequivocally resolve the question of whether the Board had the right to an immediate appeal of an interlocutory order rejecting a claim of quasi-judicial immunity. *See State v. Keller-Bee*, ___ Md. App. ___, ___, 2015 WL 4081274, at *2-3 (July 6, 2015) (holding that court clerk had right to take immediate appeal of ruling denying motion to dismiss based on absolute judicial immunity). In any event, the Board did not appeal.

### F.     The First Motion to Compel

On November 5, 2013, the Geiers moved to compel discovery, contending that the Board had not complied with their earlier discovery requests, which principally concerned the rationale for issuing a public cease and desist order that disclosed confidential medical information.  The Board opposed those requests on the basis of the deliberative privilege, *see Hamilton v. Verdow*, 287 Md. at 563, and the work-product protection.  After a hearing on the motion, the circuit court ordered the Board to provide the requested discovery, but stayed its order for 15 days to allow the Board to pursue an interlocutory appeal.  The Board did not appeal.

### G.     The First Motion for Sanctions and the Second Motion to Compel

Although the Board began to produce responsive documents, the Geiers were dissatisfied with the pace and quantity of the production.  On January 10, 2014, the Geiers filed a second motion to compel, in which they challenged the Board's assertion of the attorney-client privilege.  A week later, the Geiers moved for sanctions after the Board informed them that it had belatedly located 14 boxes of documents that might be responsive to the requests for production.

On February 20, 2014, the circuit court granted the motion for sanctions, but did not specify a sanction.  On the same day, the court granted the motion to compel the putatively privileged documents.  The Geiers assert that the Board produced those documents four days later.

**H.     The Third Motion to Compel**

On May 1, 2014, shortly after they had failed in their petitions for judicial review

of the Board's decisions against them, the Geiers filed a third motion to compel.  That

motion concerned two classes of documents: the Board's administrative investigatory file

in its disciplinary proceedings against Dr. Geier's partner, John L. Young, M.D.; and

communications between the Board's attorneys and defendant Joshua Shafer, an

investigator for the Board.  The Geiers argued that the Board had proceeded against Dr.

Geier's partner, Dr. Young, as part of its campaign to discredit their research.

The Board opposed the production of the deliberations in Dr. Young's case on a

number of grounds, including the deliberative privilege, the attorney-client privilege, the

work-product protection, and HO § 14-410, which states that, generally, "[t]he

proceedings, records, or files of the Board, a disciplinary panel, or any of its other

investigatory bodies are not discoverable and are not admissible in evidence[.]"

Following a hearing on June 17, 2014, the circuit court granted the Geiers' motion

and compelled the disclosure of all of the requested documents.  On June 26, 2014, the

Board filed a notice of appeal of that order.  That appeal is before us as No. 722.

**I.     The Proceedings after the Initial Appeal, and the Entry of the Order of Default on the Issue of Liability**

In an order dated August 15, 2014, this Court granted the Board's motion to stay

the production of Dr. Young's file and all other discovery pending further orders of court.

In a revised order dated September 24, 2014, this Court stayed the production of Dr.

Young's file, of audio recordings of the Board's deliberations in the disciplinary

-11-

proceedings against Dr. Geier and Mr. Geier, and of any written communications concerning this case between the Board or its members and the Board's attorneys. In the meantime, however, a number of additional developments had occurred in the circuit court.

On June 17, 2014, the day of the order granting the third motion to compel, the Geiers served a notice of deposition for a representative of the Board. The notice set the deposition for the previously agreed dates of July 1 through July 3, 2014, and enumerated no fewer than 167 discrete topics on which the Geiers requested testimony, including the Board's investigation of Dr. Young. On June 29, 2014, two business days before the commencement of the deposition, the Board moved for a protective order. In support of the protective order, the Board did not assert the deliberative privilege or complain about the staggering number of requested topics. It simply asserted that the topics were insufficiently specific and that its designee had "a professional scheduling conflict."[7]

Although the Board did not obtain a protective order before the deposition was to begin, its designee and counsel nonetheless failed to appear. The failure to appear prompted a second motion for sanctions. *See* Md. Rule 2-432(a) (authorizing immediate sanctions if any officer, director, or managing agent of a party or a person designated

---

[7] The court later learned that, although the designee had been on vacation outside of the State during the week before the deposition, she had returned to Maryland by the date of the deposition. Her "professional scheduling conflict" was that she had arranged to take off from work on the first day of the deposition.

under Rule 2-412(d) to testify on behalf of a party, fails to appear before the officer who is to take that person's deposition, after proper notice).[8]

Meanwhile, even though the Board had not yet obtained a stay of the June 17, 2014, discovery order from either the circuit court or this Court, the Board did not produce the documents that the circuit court had compelled it to produce. The Board's conduct prompted a third motion for sanctions, which the circuit court granted on August 14, 2014, one day before this Court stayed discovery.

The Board's designee had appeared for a deposition on July 29, 2014, but was unprepared to address many of the topics in the notice, including the investigation of Dr. Young. The lack of preparation prompted a fifth motion for sanctions on August 8, 2014.[9] After denying the Board's motion to stay any action on the motion pending the appeal of the discovery order of June 17, 2014, the circuit court granted the motion for sanctions in a memorandum and order dated December 16, 2014. In that memorandum, the court exhaustively detailed the Board's conduct in discovery and, on the basis of that conduct, imposed the sanction of a default order against the Board on the issue of liability. The court added that "[o]nce the current interlocutory appeal has been resolved, the court will schedule a trial on damages."

---

[8] The circuit court eventually denied the protective order, as well as a motion to limit the designee deposition to one, seven-hour day.

[9] The Geiers' fourth motion for sanctions concerned the Board's counsel's conduct at other depositions. The circuit court has not ruled on that motion.

The Board took an appeal from the December 16, 2014, order. That appeal is before us as No. 2256.

This Court consolidated the two appeals by order dated January 27, 2015.

**DISCUSSION**

**I.     The Motions to Dismiss**

We begin by addressing the scope of this consolidated, interlocutory appeal. The Geiers have asked this Court to dismiss both appeals. We shall deny the motion as to the discovery order of June 17, 2014, but grant it as to the order of default.

**A.     Appealability of June 17, 2014, Order**

Generally, parties may appeal only from the entry of a final judgment. Md. Code (1974, 2013 Repl. Vol.) § 12-301 of the Courts and Judicial Proceedings Article ("[A] party may appeal from a final judgment entered in a civil or criminal case by a circuit court"). "[A] ruling must ordinarily have the following three attributes to be a final judgment: (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court acts pursuant to Maryland Rule 2-602(b) to direct the entry of a final judgment as to less than all of the claims or all of the parties, it must adjudicate or complete the adjudication of all claims against all parties; [and] (3) it must be set forth and recorded in accordance with Rule 2-601." *Metro Maint. Sys. South, Inc. v. Milburn*, 442 Md. 289, 298 (2015) (citing *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41 (1989)). All parties agree that the June 17, 2014, discovery order is not a final judgment. *See, e.g., In re Foley,* 373 Md. 627, 634 (2003); *accord St. Joseph Med. Ctr., Inc. v. Cardiac Surgery Assocs., P.A.*, 392 Md. 75, 85-87 (2006).

-14-

The Board, however, argues that the order is appealable under the collateral order doctrine, a "very narrow exception" to the final judgment rule (*see, e.g., Dawkins v. Baltimore City Police Dep't*, 376 Md. 53, 58 (2003)) that "treats as final and appealable a limited class of orders which do not terminate the litigation in the trial court." *Patuxent Valley*, 300 Md. at 206. Those orders have been deemed appealable under the collateral order doctrine because they are "offshoots of the principal litigation in which they are issued[.]" *Stevens*, 337 Md. at 477 (citation omitted).[10]

To qualify as a collateral order, a ruling must satisfy four criteria: "(1) it must conclusively determine the disputed question; (2) it must resolve an important issue; (3) it must be completely separate from the merits of the action; and (4) it must be effectively unreviewable on appeal from a final judgment." *See, e.g., Addison v. Lochearn Nursing Home, LLC*, 411 Md. 251, 285 (2009). On a number of occasions, Maryland courts have held that, notwithstanding the general prohibition on immediate appeals of discovery

---

[10] The Board also relies on *Baltimore City Dep't of Social Services v. Stein*, 328 Md. 1 (1992). *Stein* held that a government agency, which was *not* a party to the case, could take an immediate appeal of an order compelling it to produce confidential information without first disobeying the order and being held in contempt. *Id.* at 20-21. In reaching its decision, the *Stein* Court likened the non-party agency to a government official claiming immunity, who, the Court suggested, could take an immediate appeal of an order rejecting a claim of immunity. *See id.* at 18-20. In subsequent decisions, however, the Court of Appeals has dramatically curtailed the ability of government officials to take immediate appeals of interlocutory orders that reject immunity defenses. *See, e.g., Dawkins*, 376 Md. at 65 (holding that, "[a]s a general rule, interlocutory trial court orders rejecting defenses of common law sovereign immunity, governmental immunity, public official immunity, statutory immunity, or any other type of immunity, are not appealable under the Maryland collateral order doctrine"). In the aftermath of *Dawkins*, *Stein* is best understood as permitting a *non-party* to take an immediate appeal of an order compelling it to provide discovery. *See Cardiac Surgery Assocs.*, 392 Md. at 89-91. Because the Board *is* a party, *Stein* does not advance its cause.

orders, the collateral order doctrine may permit an immediate appeal of a discovery order that permits a litigant to inquire into the decisional processes of high-level government officials, particularly administrative adjudicators.

In *Patuxent Valley*, 300 Md. at 204, the Public Service Commission issued a certificate to authorize a utility to construct overhead transmission lines. Patuxent Valley, an association of affected property owners, petitioned for judicial review and took steps to depose the commissioners. *Id.* In support of the unusual request to depose administrative decision-makers in an action for judicial review, Patuxent Valley and its allies cited a possible ex *parte* communication between the hearing examiner and the chairman of the Commission and made vague allegations of bias and bad faith. *Id.* at 204-05. The circuit court denied the Commission's motion for a protective order, the Commission appealed, and Patuxent Valley moved to dismiss the appeal on the ground that the discovery order was not a final judgment. *Id.* at 205.

After issuing a writ of certiorari on its own motion (*see id.*), the Court of Appeals denied the motion to dismiss and held that the Commission had the right to take an immediate appeal under the collateral order doctrine. *Id.* at 210. In an opinion by Judge Eldridge, the Court reasoned that the Commission had met the four criteria of the collateral order doctrine:

> First, the order conclusively determined that individual Commission officials must appear for depositions with respect to their decision to grant [the utility] certificate. Second, the issue is clearly important. If, in actions for judicial review of administrate decisions, it is permissible for trial courts to order the depositions of the administrative decision makers, upon the type of allegations made in this case, the impact upon administrative agencies of the State and local governments may be quite substantial.

Third, the question whether Commission decision makers should be required to stand for depositions is distinct from the merits of Patuxent's action for judicial review of the agency decision. Finally, if not appealable until the conclusion of the trial, the claim that Commission members should not be routinely subjected to extensive probing of their individual decisional thought processes would irretrievably be lost. Regardless of the outcome of the trial, the disruption to the administrative process, caused by placing the officials under pretrial scrutiny, is incurred at the first instance. Therefore, it would be impossible to cure the harm done to the Commission once the depositions have been taken.

*Id.* at 206-07.

The Court took pains to distinguish routine discovery orders from an order requiring high-level governmental decision-makers to submit to questioning about their decisional processes: while routine discovery orders ordinarily are effectively reviewable on appeal from a final judgment on the merits, "the harm that will result from deposing Commission members before trial, should they be immune from this type of scrutiny, will occur from the instant they are subjected to a probing of their decision making processes." *Id.* at 208.

The Court added that, "in the context of administrative decisionmaking, judicial review of Commission decisions is generally based on the record, and the thought processes of individual agency officials are free from scrutiny." *Id.* at 209. "It would defeat this principle," the Court stated, "if agency officials were routinely forced to undergo time-consuming depositions, then proceed to trial, and ultimately, upon a final judgment in the case, attempt to litigate the issue of whether they should have been deposed in the first place." *Id.*[11]

---

[11] On the merits, the Court held that, in an action for judicial review of an

Similarly, in *Montgomery County v. Stevens*, 337 Md. at 475, the Montgomery County Chief of Police exercised his right, under the Law Enforcement Officers Bill of Rights, to impose a higher penalty than a board had recommended for a policeman who had engaged in conduct unbecoming an officer. In the officer's action for judicial review, he sought to depose the Chief, as well as several other County and local officials. *Id.* at 476. When the circuit court allowed the depositions to proceed over the County's objection, the County took an immediate appeal, which the officer moved to dismiss. *Id.*

After issuing a writ of certiorari on its own motion, the Court, in another opinion by Judge Eldridge, followed *Patuxent Valley* and held that the discovery order "meets the requirements of the collateral order doctrine and is, therefore, appealable as a final judgment." *Id.* at 478. Indeed, the Court said that the facts of *Stevens* were "essentially the same as the facts in *Patuxent Valley.*" *Id.* at 479. The Court reasoned:

> First, [the order] conclusively determines that Chief Edwards must appear for depositions. Second, the importance of the issue in question here is identical to that in *Patuxent Valley*, that is, the potentially great harm to the public by the "disruption of the governmental process" that can be caused by discovery into the decision making processes of a high level government official. Third, the issue as to whether the deposition is appropriate is distinct from the merits of the action for judicial review. Finally, this issue will become effectively unreviewable later, because the harm would occur when the deposition was taken, and there would be no effective remedy available thereafter.

*Id.* at 479-80 (internal citation omitted).

administrative decision, a party may depose individual administrative decision-makers only where the party "makes a strong showing to the court of bad faith or impropriety[.]" *Patuxent Valley*, 300 Md. at 218. Because Patuxent Valley had not made that showing, the Court held that the circuit court abused its discretion in allowing the depositions to go forward. *Id.*

-18-

Accordingly, the Court held that the appeal could proceed. *Id.* at 480.[12]

On a number of occasions, this Court has applied *Patuxent Valley* and *Stevens* in permitting an immediate appeal of orders that permitted litigants to obtain discovery from high-level decision-makers. *Maryland State Bd. of Dental Exam'rs v. Fisher*, 123 Md. App. 322, 327-28 (1998) (applying collateral order doctrine to entertain immediate appeal of order, in action for judicial review, that permitted litigant to depose administrative decision-makers and required administrative board to produce its minutes for in camera review); *see also Johnson v. Clark*, 199 Md. App. 305, 308 n.1 (2011) (applying collateral order doctrine to entertain immediate appeal from order denying motion to quash deposition of County Executive).[13]

By their terms, *Patuxent Valley* and *Stevens* apply only in actions for judicial review of an administrative decision, when the agency's opponent attempts to obtain discovery about the decision-makers' deliberative processes. Consequently, if the circuit court had permitted Dr. Geier or David Geier to pursue discovery about the Board's deliberations *in their actions for judicial review*, *Patuxent Valley* and *Stevens* would have permitted the Board to take an immediate appeal. *Patuxent Valley* and *Stevens*, however,

---

[12] On the merits, the *Stevens* Court held that the circuit court had erred in requiring discovery from the administrative decision-maker. *Id.* at 486.

[13] In *Fisher*, this Court held that the circuit court had erred in ordering depositions, but had not abused its discretion in requiring in camera review of the minutes. *Fisher*, 123 Md. App. at 328, 329. In *Johnson*, which was not an action for judicial review, this Court barred the County Executive's deposition, because the only relevant information concerned his mental processes while performing discretionary acts. *See Johnson*, 199 Md. App. at 328-30.

-19-

do not directly apply to this case, which involves an independent tort claim for damages for invasion of privacy, rather than a petition for judicial review.

Nevertheless, the June 17, 2014, discovery order meets the four criteria of the collateral order doctrine. First, like the discovery orders in *Patuxent Valley* and *Stevens*, the discovery order in this case conclusively determines that the Board must produce evidence of its deliberations and decisional processes. Second, because of "the potentially great harm to the public by the 'disruption of the governmental process' that can be caused by discovery into the decision making processes of [] high level government official[s]" (*Stevens*, 337 Md. at 479 (quoting *Patuxent Valley*, 300 Md. at 208)), the issue is no less important than the discovery issues in *Patuxent Valley* and *Stevens*. Third, the issue of whether it is appropriate to permit discovery into the deliberative processes of an administrative adjudicator[14] is distinct from the merits of the Geiers' tort claim for invasion of privacy. Finally, this issue is effectively unreviewable on appeal from a final judgment, because the harm occurs when the administrative decision-makers are compelled to disclose their deliberative processes. "[T]here would be no effective remedy thereafter." *Stevens*, 337 Md. at 480.

Furthermore, from a review of the record, it is beyond any serious dispute that the Geiers have used this case to circumvent the prohibition on discovery in their actions for judicial review and to obtain documents and testimony to challenge to the Board's

---

[14] *See, e.g., Patuxent Valley*, 300 Md. at 214 (quoting *United States v. Morgan*, 313 U.S. 409, 422 (1941)) (just as a party may not depose a judge about his or her decisional processes, "'so the integrity of the administrative process must be equally respected'").

administrative actions against them. In particular, although the Geiers successfully persuaded the circuit court to seal the record at the outset of this case, they repeatedly asked the court to unseal much of the record so that they could use it in their petitions for judicial review. For example:

1. On November 5, 2013, the Geiers moved to unseal a portion of the deposition of the Board's administrative prosecutor, Victoria Pepper, in which they questioned her "concerning her role in, and the adequacy of her investigation into, the charges against Dr. Mark Geier." The Geiers explained that they intended to introduce the transcript into evidence in Dr. Geier's petition for judicial review.

2. On December 20, 2013, the Geiers moved to unseal the deposition of Dr. Paul Elder, a Board member. Dr. Elder had not yet testified at the time of the motion, but the Dr. Geier "anticipate[d]" that Dr. Elder's testimony would "be directly relevant and necessary evidence" in Dr. Geier's petition for judicial review.

3. On February 6, 2014, the Geiers moved to unseal "any documents produced by Defendants that relate to their respective judicial review proceedings." Although the motion did not expressly state that Dr. Geier and David Geier intended to employ those documents in connection with their petitions for judicial review, it noted that they were both "seeking judicial review of adverse decisions before the Maryland Board of Physicians."

4. On March 6, 2014, the Geiers moved to unseal all rulings and information that did not relate to the Geiers' private medical information. Explaining the timing of the motion, the Geiers stated, "[a] brief is due in Dr. Mark Geier's judicial review case on

-21-

Monday, March 10, 2014." They added that "an opening brief is due in David Geier's judicial review case during the week of March 10, 2014."

5. Just before his petition for judicial review came before the circuit court, Dr. Geier requested a stay "to allow him time to accumulate evidence from the discovery process" in his tort claim "against the Board." *Geier*, 223 Md. App. at 448-49. He asserted that during discovery he had "'uncovered evidence that directly demonstrated bad faith, malice, and irregularities (*i.e.*, misconduct) committed by the Board and its members and the administrative prosecutor against [him] in" the administrative proceeding. *Id.* at 449.

6. Similarly, in his petition for judicial review, Mr. Geier also moved for a stay of the proceedings or, alternatively, to admit new testimony or evidence. *Geier*, No. 709, Sept. Term 2014, slip op. at 26. He too claimed that the evidence, which largely concerned the Board members' deliberations, would show "irregularities and misconduct by Board members and staff." *See id*.

7. Even after the circuit court had denied the stays, affirmed the Board, and ruled against the Geiers on their petitions for judicial review, they continued to use the ongoing discovery in this case to discredit the Board and bolster their legal positions. In David Geier's appeal from the denial of his petition for judicial review, he cited a number of instances of alleged misconduct that he did not cite to the circuit court. In justifying their discovery requests at the hearing that led to the discovery order of June 17, 2014, the Geiers complained of what they saw as defects and inadequacies in the Board's decisional processes and left little doubt that they intended to invoke those flaws, as well

-22-

as any others that they might later find in discovery, in a kind of rhetorical collateral attack on the administrative judgments against them.[15]

This case does differ from *Patuxent Valley* and *Stevens* in that they concerned depositions, while this concerns the production of documents. In our view, however this is a distinction without a difference. The administrative decision-makers did not have the right to an immediate appeal in *Patuxent Valley* and *Stevens* only because an adversary had attempted to depose them about their deliberative processes; they had the right to appeal because the adversary had attempted to inquire into their deliberative processes. The administrative decision-makers would have had the right to an immediate appeal if the attempt to invade their decisional processes came in the form of interrogatories, document requests, requests for admissions, or some other discovery device. Indeed, in *Fisher*, 123 Md. App. at 329, this Court followed *Patuxent Valley* and *Stevens* in entertaining an immediate appeal of a discovery order compelling an administrative board to produce the minutes of its deliberations. In addition, in the slightly different context of a tort claim action against the Governor (as opposed to an administrative agency), the Court of Appeals employed the collateral order doctrine to review and reverse a discovery order that required the chief executive to submit privileged documents, including documents as to which he had asserted the executive privilege, for

---

[15] *Compare Maryland-Nat'l Capital Park & Planning Comm'n v. Mardirossian*, 184 Md. App. 207, 223 (2009) (holding that court did not abuse its discretion in permitting the deposition of administrative decision-makers because the party "disavowed any intent to question the Commissioners' mental processes").

"expanded *in camera* review" by the circuit court and opposing counsel. *Ehrlich v. Grove*, 396 Md. 550, 571-72 (2007).

In summary, in the unusual circumstances of this specific case, we have appellate jurisdiction to review the discovery order of June 17, 2014, under *Patuxent Valley*, *Stevens*, and the collateral order doctrine. We would certainly have had appellate jurisdiction had the court allowed discovery of the Board's deliberative processes in an action for judicial review. We see no reason why we would not also have appellate jurisdiction when a court allows discovery of the Board's deliberative process in a separate action that is quite obviously being used to garner evidence in connection with an action for judicial review or the functional equivalent of a collateral attack on the agency's final decision. Accordingly, we hold that the appeal of the discovery order of June 17, 2014, "comes within the collateral order doctrine and is properly before us." *Stevens*, 337 Md. at 480. Therefore, we deny the motion to dismiss Case No. 722.[16]

---

[16] In arguing that the collateral order doctrine does not permit an immediate appeal in this case, the Geiers cite *County Comm'rs of St. Mary's County v. Lacer*, 393 Md. 415 (2006). In that case, the Court of Appeals held that the collateral order doctrine did not allow the county commissioners to take an immediate appeal of an order that allowed a former employee to inquire into their discussions, in executive session, when they discussed the termination of his contract. The *Lacer* Court distinguished *Patuxent Valley* and *Stevens* because the order "permitt[ed] only an objective investigation into the facial statements and actions of the Board during the closed session meeting" and did not pertain to "the thought processes of the decision-makers." *Lacer*, 393 Md. at 430. *Lacer* differs from this case, because the circuit court's discovery order unquestionably permits the Geiers to inquire into "the thought processes of the decision-makers." In fact, the whole purpose of the Geiers' discovery requests is to inquire into the Board's thought processes and motivations.

**B.    Appealability of December 16, 2014, Order of Default**

On December 16, 2014, the circuit court entered an order of default as to liability. The order of default corresponded to the Geiers' fifth motion for sanctions, which complained that the Board had failed to produce a qualified or competent organizational representative for a deposition.  The order contemplated that the court would wait to decide damages after this Court resolved the Board's interlocutory appeal of the June 17, 2014, order.

It is beyond dispute that, because the order of default leaves open the question of damages, it is not a final judgment.  *See Banegura v. Taylor*, 312 Md. 609, 618 (1988) (determining that entry of order of default, which left damages open for future trial, was not final judgment and could not be immediately appealed); *Adams v. Mallory*, 308 Md. 453, 461 (1987) ("[the order], which purported to enter a judgment of default without determining any relief is not a final judgment under the Maryland Rules"); *Farragut Vill. Condo. Ass'n, Section III v. Bowling*, 168 Md. App. 376, 381 (2006) ("There may be a partial judgment as to liability . . . but there is no final and appealable judgment until the issue of damages has also been resolved"); *see also* Md. Rule 2-613 and Md. Rule 2-433(a)(3) (enabling court to enter default judgment as discovery sanction only after determination of damages).

The Board correctly concedes that a party cannot appeal from an order of default on the issue of liability.  Nonetheless, the Board argues that because the collateral order doctrine treats the discovery order of June 17, 2014, as a final judgment, every other order in the case, including the subsequent order of default and perhaps even the order

-25-

denying the Board's motion to dismiss, have now come before the Court. The Board misunderstands the concept of a collateral order.

It is true that, under Md. Rule 8-131(d), "[o]n an appeal from a final judgment, an interlocutory order *previously* entered in the action is open to review by the Court unless an appeal has previously been taken from that order and decided on the merits by the Court." (Emphasis added.) Yet, even if the discovery order of June 17, 2014, qualified as a conventional final judgment (which it does not), Rule 8-131(d) would not authorize the review of the subsequent order of default: by its terms, the rule authorizes the review only of interlocutory orders that were entered "previously" to the final judgment.

In any event, in *Snowden v. Baltimore Gas & Electric Co.*, 300 Md. 555, 560 n.2 (1984), the Court of Appeals, in a decision by Judge Eldridge, made it clear that this appellate rule ordinarily does *not* apply when a party exercises the right to an immediate appeal of an interlocutory order under a statute, a rule, or the collateral order doctrine.[17] In reaching that decision, the *Snowden* Court specifically rejected the contention that a permissible interlocutory appeal, such as an appeal under the collateral order doctrine, is "'a final decision to which may be added other matters for appeal.'" *Id.* (quoting *United States v. Fort Sill Apache Tribe*, 507 F.2d 861, 863-64 (Ct. Cls. 1974)). The Court also rejected the contention that a permissible interlocutory appeal "'can carry along wholly unrelated holdings.'" *Snowden*, 300 Md. at 559 n.2 (quoting *Fort Sill*, 507 F.2d at 864).

---

[17] *Snowden* concerned the scope of former Rule 887, which was substantially identical to Rule 8-131(d).

Accordingly, in a permissible interlocutory appeal under the predecessor of Rule 2-602(b), the Court refused to consider a challenge to any decision other than the specific interlocutory decision that had come before it. *Snowden*, 300 Md. at 559 n.2; *accord Banashak v. Wittstadt,* 167 Md. App. 627, 671 (2006) ("the appealability of each separate issue must be analyzed in a vacuum," and "there are no two-for-the-price-of-one bargains on the appellate docket"); *Forward v. McNeily*, 148 Md. App. 290, 296 n.2 (2002) ("a non-appealable order may not be combined with an appealable interlocutory order so as to confer jurisdiction upon this Court"); *cf. Davis v. Attorney General*, 187 Md. App. 110, 123 (2009) (entertaining appeal of second interlocutory ruling because it "directly controll[ed]" and "was inextricably bound to the order that [was] treated as final for purposes of appeal"). Had the appeal reached the *Snowden* Court under the collateral order doctrine, the result would have been the same.

Furthermore, in a permissible, interlocutory appeal under the collateral order doctrine, it would make no sense to allow the parties to contest every other order in the case as though there had been a conventional final judgment. "The collateral order doctrine 'is based upon a judicially created fiction, under which certain interlocutory orders are considered to be final judgments, even though such orders clearly are *not* final judgments.'" *Ehrlich v. Grove*, 396 Md. at 562 (quoting *Dawkins*, 376 Md. at 64). More important, a party may take an immediate appeal of a collateral order only if it is "collateral" — *i.e.*, only if it is "completely separate from the merits of the action." *See, e.g.*, *Addison*, 411 Md. at 285. It would be absurd to say that, in an appeal that is permissible only if the subject matter is "completely separate from the merits of the

action," the appellate court may proceed to consider and decide every interlocutory ruling pertaining to the merits of the case.

In advocating for the contrary conclusion, the Board cites *Stevens*, 337 Md. at 476-77, which remarked, in passing, that under Rule 8-131(d), "on appeal from an order constituting a final judgment, other orders, even if interlocutory, are generally reviewable by the appellate court." The Board concludes that because we can consider the discovery order under the collateral order doctrine, we may also consider any other orders in the case, including the order of default. The Board misreads *Stevens*.

In *Stevens* the Court of Appeals did not employ the collateral order doctrine as a vehicle to review and decide issues other than the discovery order that permitted the depositions of administrative decision-makers. The *Stevens* Court decided no issues pertaining to the merits of the case. Instead, the Court simply said that because the collateral order doctrine permitted the Chief of Police to take an immediate appeal of the order that required him to submit to the deposition, it need not consider whether his co-appellants, the other County and local officials, had the right to appeal the discovery orders affecting them as well. *See Stevens*, 337 Md. at 476. The Court cited Rule 8-131(d) to indicate that because it had appellate jurisdiction to consider the discovery order concerning the Chief, it would also consider the accompanying orders concerning the other officials. *See id.*[18]

---

[18] Aside from *Stevens*, the Board cites *In re Guardianship of Zealand W.*, 220 Md. App. 66 (2014); *Tschechtelin v. Samuels*, 124 Md. App. 389, *rev'd on other grounds*, 353 Md. 508 (1999); and *Bradley v. Fisher*, 113 Md. App. 603 (1997). In *Zealand W.*, the court, while addressing an interlocutory appeal that was permitted by statute, discussed

In short, we have appellate jurisdiction to decide the validity of the discovery order of June 17, 2014, and of no other order. Under *Snowden*, we do not have jurisdiction to consider or decide unrelated orders, such as the subsequent order of default or other orders pertaining to the merits of the case, merely because we have jurisdiction to consider a collateral order, such as the discovery order.

Accordingly, in proceeding to the merits of this case, we shall limit our discussion to the discovery order. Therefore, we grant the motion to dismiss Case No. 2256, concerning the order of default. As previously stated, however, our decision on the discovery order may, affect the circuit court's evaluation of how to treat the order of default.

## II.    The Merits

In its order of June 17, 2014, the circuit court compelled the Board to produce the records of its pre-decisional deliberations in the administrative proceedings against Dr. Geier's partner, John L. Young, M.D., and communications between the Board's

---

other issues "(1) to decide issues that were the appropriate subject of an interlocutory appeal; and (2) for the guidance of the circuit court upon remand." *Zealand W.*, 220 Md. App. at 79. In *Bradley*, an interlocutory appeal under the collateral order doctrine, this Court declined to consider any rulings other than the collateral order itself. *Bradley*, 113 Md. App. at 605-06. In *Tschechtelin*, another interlocutory appeal under the collateral order doctrine, this Court followed *Bradley* and again declined to consider any rulings other than the collateral order itself. *Tschechtelin*, 124 Md. App. at 400. Notably, both *Bradley* and *Tschechtelin* involved appeals from the denial of dispositive motions on grounds of sovereign immunity. Under a subsequent Court of Appeals decision, however, those rulings are no longer immediately appealable. *Dawkins*, 376 Md. at 65.

attorneys and Joshua Shafer, an investigator for the Board.  We shall address each of those rulings in turn.

## A.    Dr. Young's Files

In the circuit court, the Board asserted two grounds for withholding documents pertaining to the proceedings against Dr. Young: the deliberative privilege and HO § 14-410's general statutory prohibition against the discovery and admission of the Board's proceedings, records, or files.  The circuit court rejected both grounds.  We disagree with the circuit court.[19]

### 1.  HO § 14-410

The Board argues that under HO § 14-410, the circuit court was foreclosed from ordering the disclosure of Dr. Young's file to the Geiers.

HO § 14-410 states as follows:

(a) Except by the express stipulation and consent of all parties to a proceeding before the Board, a disciplinary panel, or any of its other investigatory bodies, in a civil or criminal action:

    (1) The proceedings, records, or files of the Board, a disciplinary panel, or any of its other investigatory bodies are not discoverable and are not admissible in evidence; and

    (2) Any order passed by the Board or disciplinary panel is not admissible in evidence.

---

[19] Appellate courts ordinarily review discovery decisions for abuse of discretion, but the applicability of a privilege is a question of law.  *See, e.g.,* *100 Harborview Drive Council of Unit Owners v. Clark,* ___ Md. App. ___, 2015 WL 4598347, at \*8 (July 30, 2015) (applying *de novo* standard of appellate review to trial court's legal determinations regarding privilege and interpretation of statute regarding discovery).  Consequently, we conduct a *de novo* review of the circuit court's decisions regarding privilege.

(b) This section does not apply to a civil action brought by a party to a proceeding before the Board or a disciplinary panel who claims to be aggrieved by the decision of the Board or the disciplinary panel.

Section 14-410(a) announces a general rule that, absent the "express stipulation and consent of all parties to a proceeding before the Board, a disciplinary panel, or any of its other investigatory bodies," "[t]he proceedings, records, or files of the Board, a disciplinary panel, or any of its other investigatory bodies" are neither discoverable nor admissible. Section 14-410(b) creates an exception, under which "[t]he proceedings, records, or files of the Board, a disciplinary panel, or any of its other investigatory bodies" may be discoverable and admissible in "a civil action brought by a party to a proceeding before the Board or a disciplinary panel who claims to be aggrieved by the decision of the Board or the disciplinary panel."[20]

Although Dr. Young has consented to the release of his files to the Geiers, the Geiers do not claim to have the "express stipulation and consent of all parties to a proceeding before the Board, a disciplinary panel, or any of its other investigatory bodies." HO § 14-410(a). To the contrary, the Board, which is a party to the proceeding involving Dr. Young, emphatically objects to the release of those files to the Geiers. Consequently, section 14-410 prevents the disclosure of the Dr. Young file unless the Geiers' case comes within subsection (b)'s exception for a "civil action brought by a

---

[20] For a discussion of the meaning of the "proceedings, records, or files" under the related statutory privilege for medical review committees, *see Cardiac Surgery Assocs.*, 392 Md. at 91-103.

-31-

party to a proceeding before the Board . . . who claims to be aggrieved by the decision of the Board . . . ."

The Geiers argue that they come within subsection (b) because they "claim[] to be aggrieved by [a] decision of the Board" and have brought "a civil action." Although it is not completely clear whether the Geiers claim to have been aggrieved by the decisions in the administrative proceedings against them, by the decision to issue the cease and desist order disclosing their confidential medical information, or by some other decision, the circuit court agreed with the Geier's interpretation. We reject that interpretation, because it is inconsistent with the policy of section 14-410 to allow one party who "who claims to be aggrieved by the decision of the Board" to obtain "[t]he proceedings, records, or files of the Board" in a proceeding involving a completely different party.

In *Baltimore Sun v. Univ. of Maryland Med. Sys.*, 321 Md. 659 (1991), the Court of Appeals discussed the discoverability of the confidential, peer-review records of a medical review committee under a statutory predecessor of what is now HO § 1-401(d). Much like HO § 14-410(a), the former statute, HO § 14-601(d)(1) (1981, 1986 Repl. Vol.), provided that "the proceedings, records, and files of a medical review committee are not discoverable and are not admissible in evidence in any civil action arising out of matters that are being reviewed and evaluated by the medical review committee." Much like HO § 14-410(b), however, the following subsection created an exception, under which the general prohibition on discovery and admissibility did not apply to "[a] civil action brought by a party to the proceedings of the medical review committee who claims to be aggrieved by the decision of the medical review committee." HO § 14-601(e).

-32-

In responding to the certified question, the Court of Appeals recognized that the general rule against the discovery and admission of medical review committee materials "is premised upon legislative appreciation that a high level of confidentiality is necessary for effective medical peer review." *Baltimore Sun v. Univ. of Maryland Med. Sys.*, 321 Md. at 668. "By protecting those records from public access in those situations covered by [former HO] § 14-601(d), the legislature recognized that a system of effective medical peer review outweighs the need for complete public disclosure." *Id.*; *accord Cardiac Surgery Assocs.*, 392 Md. at 94 (quoting *id.*).

On the other hand, the "exception to the broad statutory protection afforded by [former HO] § 14-601(d)" made it "plain," in the Court's view, "that *that protection has no application in a civil action initiated . . . by a physician who is the subject (a party to the proceedings) of the medical review committee*." *Baltimore Sun v. Univ. of Maryland Med. Sys.*, 321 Md. at 668 (emphasis added). The Court went on to explain that the exception "is premised on *the due process rights of a physician aggrieved by the decision of the medical review committee*." *Id.* (emphasis added). The "all encompassing" "rule of confidentiality" yields only so far as "to allow a physician who is the subject of a peer review to obtain the records for use in that physician's challenge to the peer review conclusions." *Id.* at 670 (Rodowsky, J., concurring).

In other words, to protect their own due process rights, physicians may discover their own files – the files from the cases in which they were "the subject" or "a party." They cannot, however, discover someone else's files. The concurring opinion made this point more acutely: "the rule of confidentiality is suspended only to the extent

-33-

necessary to achieve the purpose of the suspension." *Id.* at 670 (Rodowsky, J., concurring).

By analogy to HO § 14-410, *Baltimore Sun* compels the conclusion that the Geiers have no right to discover the "[t]he proceedings, records, or files of the Board" in the matter concerning Dr. Young. Subsection (a) makes those "proceedings, records, or files" undiscoverable and inadmissible without "express stipulation and consent of all parties to a proceeding," which the Geiers do not have. Subsection (b) creates an exception, under which the "proceedings, records, or files" concerning Dr. Young may become discoverable and admissible in a civil action brought *by Dr. Young*, in which *Dr. Young* "claims to be aggrieved by the decision of the Board."

The exception serves to permit Dr. Young to vindicate his rights if he is aggrieved by the Board's decision. *Baltimore Sun v. Univ. of Maryland Med. Sys.*, 321 Md. at 668. It does not, however, permit the Geiers, or anyone else besides Dr. Young, to discover "[t]he proceedings, records, or files of the Board" in the matter concerning Dr. Young. *See id.*; *see also id.* at 670 (Rodowsky, J., concurring). Any other rule would drastically curtail the important principle of confidentiality in Board deliberations, as it would allow any person who claims to be "aggrieved" by some "decision of the Board" to discover the Board's "proceedings, records, or files" concerning any other person, subject only to the broad definition of "relevance" for purposes of discovery. The circuit court, therefore, erred in compelling the Board to produce "[t]he proceedings, records, or files of the Board" in the matter concerning Dr. Young.

## 2. The Deliberative Privilege

The Board argues that the circuit court erroneously rejected its claim that the common-law deliberative privilege excused it from disclosing Dr. Young's file. We vacate the circuit court's order because, in determining that the privilege did not apply, the court did not expressly balance "the need for confidentiality against the [Geiers'] need for disclosure and the impact of nondisclosure upon the fair administration of justice." *Hamilton v. Verdow*, 287 Md. at 563.[21]

The deliberative privilege is a species of executive privilege (*see id.* at 561), "which has been considered part of the common law of evidence." *Id.* at 562. The terms "deliberative privilege" and "executive privilege" are used interchangeably in the relevant case law. *See* § 5680 Official Information—Deliberative Process Privilege, 26A Fed. Prac. & Proc. Evid. § 5680 (1st ed.) ("[T]he privilege has also been known by a variety of other names," including "governmental or deliberative process privilege," and "frank communications exemption"); *see also City of Colorado Springs v. White*, 967 P.2d 1042, 1048-49 (Colo. 1998) (noting that the terms "deliberative" and "executive" are used interchangeably, referring to the same privilege).

---

[21] Citing *Hamilton v. Verdow*, 287 Md. at 566, the Geiers assert that the Board did not properly present its claim of executive or deliberative privilege, because it failed to submit an affidavit. We disagree. While the State employed an affidavit (from the Governor) to present its claim of privilege in *Hamilton*, the Court of Appeals required only a "formal claim" of privilege (*id.* at 563), not a claim of privilege supported by an affidavit. In the circumstances of this case, the Board satisfied that requirement, because it gave the court adequate information about the identity of the putatively privileged documents and the basis for the asserted privilege.

In the United States, the privilege traces its roots to the treason trial of Aaron Burr, in which Chief Justice Marshall acknowledged that President Jefferson might prevent the disclosure of a letter that allegedly contained state secrets. *Hamilton*, 287 Md. at 556-57 (citing *United States v. Burr*, 25 Fed. Case. 187, 191-92 (Cir. Ct. Va. 1807)).

In explaining the rationale for the privilege, the Court of Appeals, in an opinion by Judge Eldridge, stated, "[I]t is apparent from the very nature of government that a legitimate necessity exists for the protection from public disclosure of certain types of official information." *Id.* at 556. The Court continued:

> The necessity for some protection from disclosure clearly extends to confidential advisory and deliberative communications between officials and those who assist them in formulating and deciding upon future governmental action. A fundamental part of the decisional process is the analysis of different options and alternatives. Advisory communications, from a subordinate to a governmental officer, which examine and analyze these choices, are often essential to this process. The making of candid communications by the subordinate may well be hampered if their contents are expected to become public knowledge.

*Id.* at 558.

The Court quoted Archibald Cox Jr., the Watergate special prosecutor who had pursued the tapes of President Nixon's conversations with his aides:

> [T]here are two reasons for preserving the confidentiality of intragovernmental documents reflecting advisory opinions, recommendations and deliberations comprising parts of the process by which governmental decisions and policies are formulated: (1) to encourage aides and colleagues to give completely candid advice by reducing the risk that they will be subject to public disclosure, criticism and reprisals; [and] (2) to give the President or other officer the freedom to "think out loud," which enables him [or her] to test ideas and debate policy and personalities uninhibited by the danger that his [or her] tentative but rejected thoughts will become subjects of public discussion.

*Id.* (quoting Archibald Cox, *Executive Privilege*, 122 U. Pa. L. Rev. 1383, 1410 (1974)).

Similarly, the Court quoted *United States v. Nixon*, 418 U.S. 683 (1974), in which the Supreme Court rejected President Nixon's claim of an "absolute, unqualified Presidential privilege of immunity from judicial process under all circumstances." Notwithstanding its decision on the merits, the Supreme Court nonetheless recognized that "'those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision-making process.'" *Hamilton v. Verdow*, 287 Md. at 558-59 (quoting *Nixon*, 418 U.S. at 705); *see also id.* at 559 (quoting *Kaiser Alum. & Chem. Corp. v. United States*, 157 F. Supp. 939, 946-47 (Ct. Cl. 1958)) (upholding privilege because administrator "needed advice as free from pressure and bias as possible").

The Court of Appeals also recognized another basis for the privilege, which has particular relevance to inquiries into administrative decision-making: in general, "'[t]he judiciary . . . is not authorized "to probe the mental processes" of an executive or administrative officer.'" *See Hamilton v. Verdow*, 287 Md. at 561 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 325 (D.D.C. 1966), *aff'd*, 384 F.2d 979 (D.C. Cir.), *cert. denied*, 389 U.S. 952 (1967), *which quoted Morgan v. United States*, 304 U.S. 1, 18 (1938)). "'No judge could tolerate an inquisition into the elements comprising his decision[,] indeed, (s)uch an examination of a judge would be destructive of judicial responsibility . . . . [B]y the same token the integrity of the administrative process must be equally respected.'" *Hamilton v. Verdow*, 287 Md. at 561 (quoting *Carl Zeiss*, 40 F.R.D. at 325) (quotation marks and citation omitted).

As with other privileges, the applicability of executive privilege "is for the court to decide." *Hamilton v. Verdow*, 287 Md. at 562. Executive privilege, however, "differs from many other evidentiary privileges" in that "[i]t is for the benefit of the public and not the governmental officials who claim the privilege." *Id.* at 563. In addition, "[a]part from diplomatic, military or other sensitive matters, the privilege is not an absolute one." *Id.* (citations omitted). "Rather," the privilege "attempts to accommodate the competing interests of a just resolution of legal disputes with the need to protect certain confidential government communications." *Id.*

"[W]hen a formal claim of executive privilege is made for confidential communications of the chief executive, or confidential communications of other government officials of an advisory or deliberative nature, there is a presumptive privilege, with the burden upon those seeking to compel disclosure." *Id.* Nonetheless, "[i]n many situations the courts have engaged in a balancing process, weighing the need for confidentiality against the litigant's need for disclosure and the impact of nondisclosure upon the fair administration of justice." *Id.* In particular, the courts have engaged in this balancing process when, as in this case, "there is an allegation of government misconduct," or "the government itself is a party in the underlying litigation." *Id.* at 563-64.

"Where the government is a party," the Court of Appeals added, "a question of unfair litigation advantage may arise." *Id.* at 564 n.8. "[T]he government may be in a position of asserting or defending a claim while at the same time depriving its opponent of information needed to overcome the government's position." *Id.* "In these

-38-

circumstances," the Court explained, "courts have weighed the government's need for confidentiality against its opponent's need for information." *Id.*

In summary, if the government asserts executive or deliberative privilege in a case in which the government itself is a party, or in which the government has been accused of wrongdoing, the circuit court should "weigh[] the need for confidentiality against the litigant's need for disclosure and the impact of nondisclosure upon the fair administration of justice." *Id.* at 563.

In the hearing that preceded the June 17, 2014, discovery order, however, the circuit court did not expressly balance the public interest in maintaining the confidentiality of the Board's deliberations concerning Dr. Young against the Geiers' need for disclosure of those documents and the impact of nondisclosure upon the fair administration of justice. *Id.* Instead, the court referred to an earlier hearing, on the Geiers' first motion to compel, when it had balanced the public interest in confidentiality against the Geiers' need for other information, which principally concerned the Board's rationale for publicly disclosing the Geiers' confidential medical information.

In our view, the balancing that the court had done in the past cannot substitute for the balancing that the court was required to do again when the Board asserted a different claim of deliberative privilege as to a different set of documents. Simply put, the court was not relieved of the obligation to conduct the required balancing as to the Board's deliberations about Dr. Young merely because it had previously balanced the public interest in maintaining the confidentiality of other documents against the Geiers' need for those other documents. Because the court did not conduct the requisite balancing, we

shall vacate the discovery order and remand the case to the circuit court so that it can do so, on a document-by-document basis.[22]

### B. Attorney-Client Privilege

The circuit court compelled the Board to produce some putatively privileged communications between the Board's attorneys and Joshua Shafer, an investigator for the Board. According to the Board's privilege log, most of the communications concerned the administrative proceedings against the Geiers, but some concern this case. Although we would ordinarily not have appellate jurisdiction to consider an interlocutory appeal from a discovery ruling that rejects a claim of attorney-client privilege (*Kurstin v. Bromberg Rosenthal LLP*, 420 Md. 466, 480 (2011)), we shall consider the ruling in this case, because it forms part of a ruling that we have jurisdiction to review. *See Stevens*, 337 Md. at 476.[23]

---

[22] As part of the balancing process on remand, the circuit court should assess the Board's immunity claims, because the Geiers can establish no "need for disclosure" (*Hamilton v. Verdow*, 287 Md. at 563), and nondisclosure cannot affect the "fair administration of justice" (*id.*), if an immunity insulates the defendants from liability or from suit. The Fourth Circuit has held that a peer reviewer engaged by the Board has absolute quasi-judicial immunity from federal claims. *Ostrzenski v. Seigel*, 177 F.3d 245, 253 (4th Cir. 1999). In addition, although no Maryland court has yet to squarely decide the issue, the Board argues that it, its members, and staff have absolute quasi-judicial immunity from state-law claims under the Fourth Circuit's *Ostrzenski* decision and under *Parker v. State,* 337 Md. 271 (1995), which concerns judicial (rather than quasi-judicial) immunity. The Board also argues that the administrative prosecutor has absolute quasi-prosecutorial immunity under *Gill v. Ripley*, 352 Md. 754 (1999), which concerns the immunity of criminal prosecutors. We express no opinion on the applicability of these immunities, or on the interrelationship between them and the qualified, statutory immunity under HO § 14-412, as none of those issues are properly before us at this time.

[23] In addition to arguing that the circuit court compelled the production of attorney-privileged communications, the Board argues that the court compelled the

Even though Shafer is an agent or employee of the Board,[24] the Geiers argued that the attorney-client privilege could not apply to his communications with the Board's attorneys. The Geiers reason that Shaffer was a "stranger" to the attorney-client relationship between the Board and its attorneys. They based that contention on their interpretation of a State policy, the Guidelines for Administrative Adjudicatory Proceedings. Those guidelines prohibit ex parte communications between the Assistant Attorneys General who investigate and prosecute administrative proceedings before the Board and the Assistant Attorneys General who advise the Board and require them to maintain separate files. *See* http://www.mbp.state.md.us/forms/ ag_guidelines.pdf (last viewed Aug. 26, 2015).

On their face, these guidelines do nothing more than establish a firewall to separate an agency's attorney-advocates from the agency's attorney-advisors during the course of an administrative prosecution. The guidelines have no effect on the confidentiality of communications between Board employees, such as Shaffer, and the Board's attorneys. The guidelines certainly have no effect on the confidentiality of

production of (unspecified) materials that are protected by the work-product doctrine. The Board's brief, however, contains no argument concerning work-product. Consequently, we do not consider that issue.

[24] *See* HO § 14-204(e)(2) (requiring Secretary of Department of Health and Mental Hygiene to assign sufficient number of investigators to Board). The Geiers suggest that because the Secretary "assigns" the investigators to the Board, the investigators cannot partake of the Board's attorney-client privilege. Their argument is untenable: because the investigators are "assigned" to the Board, they act for and on behalf of the Board. There is no reason why the attorney-client privilege would not apply to an investigator's communications with the Board's attorney, provided that the other requirements of the privilege are met.

communications between Board employees and the attorneys who represent them as parties or witnesses *in this case*.  If the Geiers contend that the Board's attorneys violated the guidelines, they may have a remedy thereunder.  They do not, however, have the remedy of voiding the attorney-client relationship between the Board's agents or employees and the Board's attorneys.  *See* Md. Code (1984, 2010 Repl. Vol.) § 6-106(b) of the State Government Article (stating that Attorney General "is the legal adviser of and shall represent and otherwise perform all of the legal work for each officer and unit of the State government"); Md. Const. Art. V, § 3(a)(2) ("The Attorney General shall . . . Investigate, commence, and prosecute or defend any civil or criminal suit or action or category of such suits or actions in any of the Federal Courts or in any Court of this State, or before administrative agencies and quasi legislative bodies, on the part of the State or in which the State may be interested, which the General Assembly by law or joint resolution, or the Governor, shall have directed or shall direct to be investigated, commenced and prosecuted or defended").[25]

The circuit court, therefore, erred in rejecting the claim of privilege on the ground that the guidelines made Shafer into a "stranger" to the attorney-client relationship between the Board and its attorneys.  On remand, the court should consider whether the Board has met its burden (*see E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*, 351

---

[25] The Board appeared to assume that the circuit court's ruling applied not only to communications with Shaffer, but to communications with Christine Farrelly, the Board's Executive Director.  The Geiers do not appear to share that assumption.  If the ruling did, however, apply to Farrelly as well as Shaffer, it is erroneous as to Farrelly for the same reasons that it is erroneous as to Shaffer.

-42-

Md. 396, 406 (1998)) of establishing that the communications in question otherwise

satisfy the requirements of the attorney-client privilege. *See generally Newman v. State*,

384 Md. 285, 302 (2004); *Harrison v. State*, 276 Md. 122, 135 (1975).[26]

## CONCLUSION

In summary, under the collateral order doctrine, we have appellate jurisdiction in

No. 722 to consider the discovery order of June 17, 2014, concerning the bar on

discovery of the Board's "proceedings, records, or files" under HO § 14-410, the

deliberative privilege, and the attorney-client privilege. We vacate that order and remand

the case to the circuit court for further proceedings consistent with this opinion.[27]

On the other hand, we do not have appellate jurisdiction in No. 2256 to consider

the order of default of December 16, 2014. Nevertheless, our decision concerning the

discovery order may affect some of the premises of the order of default, such as the

breadth and scope of the deposition of the Board's designee. Consequently, the circuit

court, upon a proper motion, should reevaluate that interlocutory order on remand. Md.

Rule 2-602(a); *Gertz v. Anne Arundel County*, 339 Md. at 272-73.

---

[26] In the circuit court, the Geiers argued that the Board had waived the attorney-client privilege because Dr. Elder, a Board member, testified at his deposition that he had received legal advice, but did not recall the advice that he had received. The Geiers appear to have abandoned that argument on appeal. Insofar as it has not been abandoned, the argument has no merit: a party does not waive the attorney-client privilege merely by affirming that he or she has received legal advice. A party waives the privilege only by disclosing the confidential legal advice. *Harrison*, 276 Md. at 151.

[27] The parties debate whether the June 17, 2014, order compels the Board to produce the audio recordings of its deliberations in the Geiers' disciplinary cases, or whether an earlier discovery order compelled the production those documents. We leave that issue to the circuit court on remand.

**MOTION TO DISMISS IN NO. 722
DENIED. MOTION TO DISMISS IN NO.
2256 GRANTED. DISCOVERY ORDER
OF JUNE 17, 2014, VACATED. CASE
REMANDED TO THE CIRCUIT COURT
FOR MONTGOMERY COUNTY FOR
FURTHER PROCEEDINGS CONSISTENT
WITH THIS OPINION. COSTS TO BE
DIVIDED EQUALLY BETWEEN
APPELLANTS AND APPELLEES.**

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

Nos. 722 and 2256

September Term, 2014

_____

MARYLAND BOARD OF PHYSICIANS, et al.

v.

ANNE GEIER, et al.

_____

Arthur,
Friedman,
Davis, Arrie W.,
　　　(Retired, Specially Assigned),

JJ.

_____

Concurring Opinion by Friedman, J.

_____

Filed:  October 1, 2015

I join fully in the majority opinion. I write separately to make one additional point.

In Section II.A.2 of the Court's opinion, we find that the circuit court erred by not evaluating the Board of Physicians' claim of deliberative process privilege by weighing the Board's, and through it the public's, need for the confidentiality of its internal processes as expressed in documents against the Geiers' need to obtain these documents for use in this lawsuit. Maj. Slip Op. at 34-39. In note 23, we give the circuit court some guidance about how to conduct this weighing on remand, directing it to "assess the Board's immunity claims, because the Geiers can establish no 'need for disclosure,' and nondisclosure cannot affect the 'fair administration of justice,' if an immunity insulates the defendants from liability or from suit." Maj. Slip Op. at 39 n.23 (internal citations omitted). I wholeheartedly agree but would go one step further.

I would also direct that the circuit court consider whether every document sought by the Geiers and whose production is sought to be prevented by the Board through a claim of deliberative process privilege, is germane to the appropriate scope of discovery. The Geiers can have no need (and thus they can offer no counterweight to the Board's, and through it, the public's right to confidentiality) for documents that are not relevant, or that are no longer relevant, to their lawsuit. While my brethren prefer to leave that discussion for another day, in the circumstances and given the parties' conduct of discovery so far, I would reach it today.

It is my view that the only documents relevant to this lawsuit are those that are reasonably calculated to lead to the discovery of admissible evidence related to: (1) the Board's decision to issue the cease and desist order on January 25, 2012; (2) the decision

to reveal the Geiers' confidential medical information in that cease and desist order; and (3) the duration of time that the cease and desist order was publicly available. The Geiers are entitled to any non-privileged documents related to those three topics and if they find evidence of malice in them they are entitled to present that evidence to a jury. But that's it.

The Geiers have sought (and the circuit court thus far permitted) discovery into the Board's conduct of the disciplinary proceedings against the Geiers, because they claimed that they were searching for evidence of the Board's alleged malice toward them. Maj. Slip Op. at 8-9. For even more attenuated reasons, the Geiers have sought documents related to Dr. Young. Maj. Slip Op. at 10. In light of the circuit court and this Court's decisions affirming the Board's decisions in those disciplinary proceedings, I would hold today that the Board's conduct of those disciplinary proceedings was non-malicious as a matter of law[1] irrelevant to the proper scope of the Geiers' present claims, and that, therefore, in the circuit court's weighing required by the assertion of the deliberative process privilege, the Geiers' desire for these documents can offer no counterweight to the Board's need for confidentiality.

---

[1] It seems incontrovertible to me that a finding by a reviewing court that physician disciplinary proceedings are warranted (and all the more so when the imposition discipline is confirmed on appeal) precludes, as a matter of law, that the disciplinary proceedings could have been conducted with malice, in much the same way that a conviction or a judgment is a bar to claims for malicious prosecution and malicious use of process. *Havilah Real Property v. Early*, 216 Md. App. 613, 624-25 (2014).