584 A.2d 683

The BALTIMORE SUN COMPANY, et al.

v.

The UNIVERSITY OF MARYLAND MEDICAL SYSTEM CORPORATION, et al.

Misc. No. 4, Sept. Term, 1990.

Court of Appeals of Maryland.

Jan. 23, 1991.

Mary R. Craig (Doyle & Craig, P.A., Baltimore), on brief, for appellants.

Diana G. Motz (Frank, Bernstein, Conaway & Goldman; M. King Hill, John R. Penhallegon, Smith, Somerville &

Case; J. Joseph Curran, Jr., Atty. Gen., Ralph S. Tyler, Asst. Atty. Gen., Donald L. DeVries, Jr., Craig B. Merkle, Goodell, DeVries, Leech & Gray, on brief), Baltimore, for appellees.

Robert V. Barton, Jr., Ober, Kaler, Grimes & Shriver of Baltimore, amicus curiae, for the Maryland State Dental Ass'n.

Argued before MURPHY, C.J., ELDRIDGE, COLE *, RODOWSKY, McAULIFFE, CHASANOW and MARVIN H. SMITH, Judge of the Court of Appeals (retired, specially assigned), JJ.

MURPHY, Chief Judge.

This case focuses upon Maryland Code (1981, 1986 Repl. Vol.), § 14–601 of the Health Occupations Article relating to "Medical review committees." As defined by subsection (b), these committees include, *inter alia,* medical staff committees of hospitals. Subsection (c) specifies the functions of a medical review committee:

"(1) Evaluates and seeks to improve the quality of health care provided by providers of health care;

(2) Evaluates the need for and the level of performance of health care provided by providers of health care;

(3) Evaluates the qualifications, competence, and performance of providers of health care; or

(4) Evaluates and acts on matters that relate to the discipline of any provider of health care."

Subsection (d)(1) provides that "the proceedings, records, and files of a medical review committee are not discoverable and are not admissible in evidence in any civil action arising out of matters that are being reviewed and evaluated by the medical review committee." Subsection (e) provides that

---

* Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Art. IV, Section 3A, he also participated in the decision and the adoption of this opinion.

subsection (d)(1) does not apply to "[a] civil action brought by a party to the proceedings of the medical review committee who claims to be aggrieved by the decision of the medical review committee."

The case has been certified to us by the United States Court of Appeals for the Fourth Circuit, pursuant to the Maryland Uniform Certification of Questions of Law Act, Code (1974, 1989 Repl.Vol.), §§ 12–601—12–609 of the Courts and Judicial Proceedings Article.[1] The question of state law certified by the Fourth Circuit is whether § 14–601(d) "bars press access to confidential records of a hospital's peer review committee when they are discoverable under section 14–601(e) and have been filed with and considered by the court in connection with a dispositive motion such as a motion for summary judgment."

I.

In its certification order, the Fourth Circuit set forth the facts of the case as follows.[2] Malpractice actions were filed against Dr. H. Harlan Stone, a Professor of Surgery at the University of Maryland School of Medicine, the hospital and several others doctors. After peer review committee investigations, Stone resigned from his position at the Medical System and Medical School. In November 1986, Stone filed an action against, *inter alia,* the University of Maryland

---

1. This section provides:
 "The Court of Appeals may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court, or the highest appellate court or the intermediate appellate court of any other state when requested by the certifying court if there is involved in any proceeding before the certifying court a question of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the Court of Appeals of this State."

2. We accept the statement of facts submitted by the certifying court. *Heileman Brewing v. Stroh Brewery,* 308 Md. 746, 748 n. 1, 521 A.2d 1225 (1987); *Food Fair Stores v. Joy,* 283 Md. 205, 219 n. 7, 389 A.2d 874, 882, n. 7 (1978).

Medical System Corporation ("the University") under 42 U.S.C. § 1983. This suit, filed in federal district court, District of Maryland, alleged that he was involuntarily terminated in violation of his right to due process. *See Stone v. University of Maryland Medical System*, 855 F.2d 167 (4th Cir.1988) (hereinafter *"Stone I"*).

All the defendants in the case filed a motion for summary judgment on July 10, 1987, attaching various exhibits, including excerpts from minutes of the medical review committees which had undertaken the peer review investigation of Stone. The district court, at the request of all parties, entered an order on July 23, 1987, directing that the record in the case, with the exception of the Complaint, Amended Complaint and Answers, be placed under seal. On August 14, 1987, Stone filed an opposition to the motion for summary judgment and attached to that opposition an exhibit which consisted of a peer review document. In October 1987, the district court granted defendants' motion for summary judgment, and Stone appealed to the United States Court of Appeals for the Fourth Circuit.

In December 1987, the Baltimore Sun newspaper was allowed to intervene, and it moved to vacate the seal order. Dr. Frederick K. Toy and Dr. Walter Pegoli, who had been sued in some of the malpractice actions involving Stone (those actions are still pending), were also allowed to intervene to oppose the Sun's motion. The Fourth Circuit upheld the district court's grant of summary judgment to the defendants, *Stone I*, 855 F.2d 167, and remanded the case to the district court to reconsider the appropriateness of the seal order in accordance with the procedures established in *In re Knight Publishing Co.*, 743 F.2d 231 (4th Cir.1984). *Stone v. University of Maryland Medical System*, 855 F.2d 178 (4th Cir.1988) (hereinafter *"Stone II"*). Specifically, the court instructed the district court "to give the public notice of a request to seal and a reasonable opportunity to challenge it" by docketing the motion "reasonably in advance of deciding the issue." *Id.* at 181.

On remand, the district court issued an order modifying the July 23, 1987, seal order. It lifted the seal order on all but three documents consisting of peer review material. Two of those documents were attached as exhibits to the defendants' motion for summary judgment, and the third was attached as an exhibit filed by Stone in opposition to that motion. The court's "Order Modifying Seal Order" concluded that (1) the three documents remaining under seal did come within the statutory protection of section 14–601; (2) a compelling government interest in "protecting the confidentiality of medical review records in order to foster effective, thorough, frank, and uninhibited exchange among peer review committee members so that quality patient care can be ensured ... outweigh[ed] the Sun's first amendment right of access to these records"; (3) the statutory immunity provided to these documents had not been waived; and (4) the modification is "narrowly tailored and there is no less drastic, effective alternative to it."

The Sun appealed from the district court's order. It maintained that the statute does not bar press access to medical review committee records filed in a civil action by a party to the committee proceedings, who claims to be aggrieved by the committee's decision.

## II.

■ In its certification order, the Fourth Circuit opined that § 14–601(d) "ensures some level of confidentiality to medical peer review proceedings." It recognized that in *Unnamed Physician v. Comm'n*, 285 Md. 1, 13, 400 A.2d 396 (1979), we stated that the "fundamental reason for preserving confidentiality [by enacting § 14–601] ... is to ensure a high quality of peer review activity leading to the primary goal of this legislation—to provide better health care." The Fourth Circuit further recognized in its certification order that "the confidentiality provided by § 14–601, however, is not absolute." Stating that the statute addresses only "whether medical review committee materials are discoverable and admissible at trial," the Fourth Circuit said

that the parties were in agreement that the documents were discoverable by Dr. Stone under the subsection (e)(1) exception "to the general protection afforded by § 14–601(d)."

The certified question before us is thus limited to determining whether § 14–601 is applicable to bar the press access to the committee reports under the circumstances of this case. In this regard, the Fourth Circuit stated that we "might determine that the statute is not applicable to this case, and thus alleviate any conflict between the statute and the right to access provided by the first amendment."

The Sun argues that the statutory protection afforded by § 14–601(d) erects a shield around the peer review documents, which cannot be penetrated in the civil discovery process. But it says that once all of the prerequisites to the exception set forth in § 14–601(e)(1) are satisfied, the shield falls and the privilege is simply inapplicable. According to the Sun:

"There is no middle ground permitted by the statute. Either the documents are privileged or, as in this case, the privilege 'does not apply.' § 14–601(e)(1). The plain words of the statute command this result. The Court need look no further to find the Legislature's intent."

The University responds that the statute prevents revelation of medical review committee records to any unauthorized person, including the media. It argues that the statutory immunity afforded these documents ensures that they remain confidential in all contexts other than utilization in the suit between Dr. Stone and the hospital. It suggests that the purpose of the statute is to improve patient care by maintaining the confidentiality of peer review materials. As a result, the University says that complete waiver of the confidentiality of these documents, where they have been discovered pursuant to the exception in the statute, would be wholly inconsistent with the statutory objective.

### III.

What is now § 14–601 of the Health Occupations Article was enacted as ch. 722 of the Acts of 1976, then codified as

Code (1971 Repl.Vol., 1976 Cum.Supp.), Article 43, § 134A. In its original form, § 134A(d) provided that the proceedings, records and files of a medical review committee were "neither discoverable nor admissible into evidence in any civil action arising out of matters which are being reviewed and evaluated by the committee." Within this same subsection, it was provided:

> "This immunity does not apply to a civil action brought by a party to the proceedings of the review committee and claiming to be aggrieved by the decision of the committee. Also, this immunity does not extend to any records or documents considered by the committee which would otherwise be subject to discovery and introduction into evidence in a civil action."

Subsection (e) of § 134A, now subsection (f) of § 14–601, immunizes any person acting in good faith and within the scope of jurisdiction of a medical review committee from civil liability for giving information to, participating in, or contributing to the function of the committee.

The subsequent recodification of these provisions as § 14–601(d) and (e)(1) and (2) was accomplished by ch. 8 of the Acts of 1981. According to the "Revisor's Note," the recodification was without substantive change from former Article 43, § 134A.[3]

A later amendment to § 14–601 added subparagraph (2) to subsection (d); it provides that the proceedings, records and files of a medical review committee requested to insure compliance with the provisions of § 19–319 of the Health–General Article (which concerns the credentialing process for physicians seeking staff privileges at hospitals) are

---

**3.** Somewhat cryptically, the Revisor's Note appended to § 14–601 "calls to the attention of the General Assembly that present Art. 43, § 134A(d) states in its first sentence that certain documents are privileged from discovery and admission into evidence and then in its third sentence provides for an exception that seemingly is as broad as the privilege. The revised language in this section closely follows the present law. However, the Commission believes that present Art. 43, § 134A(d), and, in turn, this section, may not state the intent of the General Assembly."

"confidential and are not discoverable and are not admissible in evidence in any civil action arising out of matters that are being reviewed and evaluated by the medical review committee." Code (1990 Cum.Supp.) § 14–601(d)(2).

In *Unnamed Physician v. Comm'n, supra*, 285 Md. at 11–12, 400 A.2d 396, we noted that a "civil action," within the contemplation of § 14–601(d), is an adversary proceeding before a court of law, encompassing a tort action for medical malpractice. A "fundamental reason" for preserving confidentiality of a medical review committee proceeding, we said, was to ensure high quality of peer review records in order to provide better health care. *Id.* at 13, 400 A.2d 396. Other states with statutes similar to § 14–601 have recognized this purpose of peer review committees. *See, e.g., Franco v. Dist. Court in & For City & Cty.*, 641 P.2d 922 (Colo.1982); *Holly v. Auld*, 450 So.2d 217 (Fla. 1984); *Jenkins v. Wu*, 102 Ill.2d 468, 82 Ill.Dec. 382, 468 N.E.2d 1162 (1984); *Daily Gazette Co. v. West Va. Bd. of Medicine*, 352 S.E.2d 66 (W.Va.1986).

The statutory protection afforded medical review committee records by § 14–601(d) is seemingly premised upon and consistent with the view expressed in Comment, *The Medical Review Committee Privilege: A Jurisdictional Survey*, 67 N.C.L.Rev. 179, at 179 (1988): "[P]hysicians are frequently reluctant to participate in peer review evaluations for fear of exposure to liability, entanglement in malpractice litigation, loss of referrals from other doctors, and a variety of other reasons. To combat this reluctance and to enhance the improvement of medical care services, at least forty-six states now have statutes that protect the work of medical review committees." Another commentator noted that the major purpose behind the medical review committee privilege is to permit the committee to work in a confidential setting in which individual members may engage in a candid and conscientious evaluation of clinical practices within the institution. *See* Hall, *Hospital Committee Proceedings and Reports: Their Legal Status*, 1 Am.J.L. & Med. 245, 254 (1975). Statutory protection of

peer review activities is supported by the notion that they result in increased peer review activity and that such activity improves medical care. Comment, *Medical Peer Review Protection in the Health Care Industry*, 53 Temple L.Q. 552 (1979).

Courts in other states, in construing their own statutes, have held that confidentiality is essential to the proper functioning of medical review committees. For example, in *Jenkins v. Wu*, 102 Ill.2d 468, 82 Ill.Dec. 382, 468 N.E.2d 1162, *supra* (1984), the court held that an exception in the Illinois medical review committee statute which granted a physician access to otherwise confidential materials in the "limited circumstances of a hospital proceeding to decide upon a physician's staff privileges or in any judicial review thereof," *id.*, 82 Ill.Dec. at 387, 468 N.E.2d at 1167 (citation omitted), did not open the door for discovery of those same documents in malpractice cases. It noted that

"the purpose of this legislation is not to facilitate the prosecution of malpractice cases. Rather, its purpose is to ensure the effectiveness of professional self-evaluation, by members of the medical profession, in the interest of improving the quality of health care. The Act is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues." *Id.*, 82 Ill.Dec. at 388, 486 N.E.2d at 1168.

Similarly, in *Terre Haute Regional Hosp. v. Basden*, 524 N.E.2d 1306, 1311 (Ind.App., 1988), the court said that "the purpose of the peer review privilege is to foster an effective review of medical care [which] requires that all participants to a peer review proceeding communicate candidly, objectively, and conscientiously." The court noted that the peer review privilege facilitates the effectiveness of the process by granting confidentiality to medical committee documents.

As the Fourth Circuit recognized in *Kappas v. Chestnut Lodge, Inc.*, 709 F.2d 878, 881 (1983), the "immunity" from

discovery and admissibility in evidence of medical review committee records which is afforded by what is now § 14–601(d) applies to "matters which are being reviewed and evaluated by the committee ... [including] improving the quality of health care, evaluating the need for and level of performance of health care rendered, as well as disciplinary matters." We think it readily apparent that the statutory protection thereby afforded by § 14–601(d) is premised upon legislative appreciation that a high level of confidentiality is necessary for effective medical peer review. By protecting these records from public access in those situations covered by § 14–601(d), the legislature recognized that a system of effective medical peer review outweighs the need for complete public disclosure.

The § 14–601(e)(1) exception to the broad statutory protection afforded by § 14–601(d) makes plain, however, that that protection has no application in a civil action initiated, as here, by a physician who is the subject (a party to the proceedings) of the medical review committee. In such limited circumstances, therefore, medical review committee records are not insulated from either discovery or admissibility in evidence in a civil action. Undoubtedly, the exception is premised on the due process rights of a physician aggrieved by the decision of the medical review committee. Nor does the exception, when applicable, foreclose all rights of public access to the otherwise confidential committee proceedings, records and files. Indeed, nothing in the statute even remotely suggests that once the committee records are properly subjected to pretrial discovery, and may be admitted in evidence in the course of the civil action, that somehow, except as between the parties in the civil action, they remain insulated from public disclosure for all other purposes. While it may be that the § 14–601(e)(1) exception may to some extent "chill" the free exchange among committee members, this is solely a matter for the legislature to consider, if it deems it necessary to further limit the right of public access to committee materials in the interest of quality patient care.

Thus, under the certified facts in this case, we conclude that Dr. Stone had a right to discover the committee records and, in the course of the civil action, to introduce them in evidence where relevant. We note that for a period of some two weeks, during the pendency of the summary judgment motions, the records were not sealed and were thus available for public inspection. That the trial judge thereafter, on the motion of all parties and after weighing all competing considerations, may have acted lawfully when he sealed the medical review committee records, has no impact upon the proper interpretation of the § 14–601(e)(1) exception to the statutory protection afforded by § 14–601(d).

 In so concluding, we have applied the elementary principle that a statute, plainly worded as in § 14–601(e)(1), must be construed without forced or subtle interpretations designed to limit its scope. *See*, e.g., *State v. Intercontinental, Ltd.*, 302 Md. 132, 137, 486 A.2d 174 (1985); *Hornbeck v. Somerset Co. Bd. of Educ.*, 295 Md. 597, 619, 458 A.2d 758 (1983). This is not a case that would reasonably permit a different interpretation after consideration of the purpose, aim or policy of the enacting body. *See, e.g., Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628 (1987); *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 73, 517 A.2d 730 (1986). In other words, giving due regard to the principle that words in a statute must be read in a way that advances the legislative policy involved, *see Morris v. Prince George's Co.*, 319 Md. 597, 603–04, 573 A.2d 1346 (1990), there is no indication that the unequivocal words of § 14–601(e)(1) protect from discovery and admission in evidence committee records once a civil action is properly initiated by the physician. Consequently, in answer to the question of state law certified to us, § 14–601(d) does not "bar[ ] press access to confidential records of a hospital's peer review committee when they are discoverable under § 14–601(e) and have been filed with and considered by the court in connection with a dispositive motion such as a motion for summary judgment."

We express no opinion as to the legality, in the circumstances of this case, of the trial judge's action in sealing the records from public inspection.

CERTIFIED QUESTION ANSWERED AS HEREIN SET FORTH; COSTS IN THIS COURT TO BE EQUALLY DIVIDED BETWEEN THE PARTIES.

RODOWSKY, Judge, concurring.

I concur in the answer. Section 14–601(d) does not "bar[ ] press access to confidential records of a hospital's peer review committee" under the circumstances here. That is because the circumstances here fall under § 14–601(e)(1) which creates an exception to the direct operation of the confidentiality rule of § 14–601(d). But the exceedingly literal interpretation of the certified question which produces the "no" answer does not fully convey the policy of Maryland law. I believe that the United States Court of Appeals for the Fourth Circuit also seeks guidance concerning the strength of the policy embodied in § 14–601(d) to aid its appellate review of the federal district court's order.

The rule of confidentiality of § 14–601(d) is so all encompassing that it was necessary expressly to carve out an exception in § 14–601(e)(1) in order to allow a physician who is the subject of a peer review to obtain the records for use in that physician's challenge to the peer review conclusions. The majority correctly observes: "Undoubtedly, the exception is premised on the due process rights of a physician aggrieved by the decision of the medical review committee."

This means that the rule of confidentiality is suspended only to the extent necessary to achieve the purpose of the suspension. The statute's policy continues, even under the circumstances here, to express a compelling governmental interest in protecting the confidentiality of medical review records in order to foster effective, thorough, frank and uninhibited exchange among peer review committee members so that quality patient care can be ensured.

Maryland's compelling interest must then be weighed against the claimed first amendment rights of access by the press. That is a question for the federal courts. It is not within the certified question.

McAULIFFE and SMITH, JJ., join in this concurring opinion.